**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

RICKEY RAWLS,

                              Plaintiff,

              v.                                              No. 9:16-CV-0582
                                                              (LEK/CFH)

DR. JOSHUA ROSENFIELD,

                              Defendant.
_____


**APPEARANCES:**                          **OF COUNSEL:**

Rickey Rawls
92-B-1437
Fishkill Correctional Facility
P.O. Box 1245
Beacon, New York 12508
Plaintiff pro se

Hon. Eric T. Schneiderman          CHRISTOPHER J. HUMMEL, ESQ.[1]
Attorney General for the           Assistant Attorney General
    State of New York
The Capitol
Albany, New York 12224
Attorney for Defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[2]

        Plaintiff pro se Rickey Rawls ("plaintiff"), an inmate who was, at all relevant times,

---

        [1] The undersigned bears no relation to counsel for defendant.

        [2] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendant Dr. Joshua Rosenfield – who, at all relevant times, was employed at Hudson Correctional Facility ("Hudson") – violated his constitutional rights under the Eighth Amendment.  Dkt. No. 1 ("Compl.").  Presently pending before the Court are plaintiff's Motion for Summary Judgment and defendant's Cross-Motion for Summary Judgment, both filed pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 56.  Dkt. Nos. 31, 35; 39.  Plaintiff and defendant opposed the respective motions, and defendant filed a reply.  Dkt. Nos. 40, 46, 47.  For the following reasons, it is recommended that defendant's motion be granted, and plaintiff's motion be denied.

## I. Arguments

### A. Plaintiff's Motion for Summary Judgment

In support of his Motion for Summary Judgment, plaintiff filed a Statement of Material Facts.[3]  Dkt. No. 35.  On review of plaintiff's Motion for Summary Judgment, the

---

[3] Local Rule 7.1(a)(3) states:

Summary Judgment Motions

Any motion for summary judgment shall contain a Statement of Material Facts.  The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.

The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's

facts will be related herein in the light most favorable to defendant as the nonmoving party. See subsection II (A) infra; Rattner v. Netburn, 930 F.2d 204, 209 (2d Cir. 1991) ("In assessing the record . . . to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought."). On October 30, 2015, Dr. Rosenfield refused to order plaintiff new compression stockings despite "know[ing] that [he] needed [them] to prevent [his] leg from [breaking] out in painful Ulser's [sic], because [he] told [Dr. Rosenfield] that [he] needed them and because it [was] in [his] medical records that [he] need them." Dkt. No. 35 at 2. After plaintiff developed an ulcer on his left ankle, Dr. Rosenfield refused to send him to a wound clinic. Id. at 2-3. Plaintiff's medical records showed that he "was always sent out immediately when an ulser [sic] developed, without delay." Id. at 3. Although Dr. Rosenfield knew of plaintiff's complaints about the ulcer, he stopped treating plaintiff, which caused a blood clot. Id. On January 8, 2016, Dr. Rosenfield failed to prescribe plaintiff pain medication, "which had been prescribed for [him] by other [d]octor's [sic] for the same injury for a number of years." Dkt. No. 35 at 2. Plaintiff suffered four months in pain that "interfered with daily activities," and only lessened when the wound healed. Id.

In opposition, defendant argues that the Court should deny plaintiff's motion

---

assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

N.D.N.Y. L.R. 7.1(a)(3).

because: (1) plaintiff failed to provide a complete and accurate statement of material facts pursuant to Local Rule 7.1(a)(3); and (2) plaintiff failed to "establish that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law." Dkt. No. 40-1 at 4-5.

## B. Defendant's Motion for Summary Judgment

In support of his Motion for Summary Judgment, defendant filed a Statement of Material Facts. Dkt. No. 39-1. The facts are related herein in the light most favorable to plaintiff as the nonmoving party. See subsection II (A) infra; Rattner, 930 F.2d at 209 ("In assessing the record . . . to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought."). On October 30, 2015, shortly after his transfer to Hudson, plaintiff met with Dr. Rosenfield for an evaluation. Dkt. No. 39-1 ¶¶ 1, 3. Dr. Rosenfield reviewed plaintiff's medical records, observing that "he suffered from previous deep vein thrombosis with venous insufficiency, vein stripping, and venous stasis." Id. ¶ 3. Pursuant to that diagnosis, Dr. Rosenfield determined that the appropriate treatment for plaintiff's medical condition was continued use of compression stockings, refraining from sitting and standing for long periods of time, and abstaining from tobacco use. Id. ¶¶ 4, 5. He also continued a Neurontin prescription to treat neuropathic pain in plaintiff's toes. Id. ¶ 8. Defendant scheduled plaintiff a follow-up appointment for three weeks later. Id. ¶ 6.

At plaintiff's November 24, 2015 appointment, Dr. Rosenfield observed an ulceration

on plaintiff's lower left leg, which he described as "a deterioration and breakdown of the skin surface caused by increased venous pressure leading to edema, slowed circulation, and reduced oxygenation." Dkt. No. 39-1 ¶¶ 9-10.    Plaintiff complained that his compression stockings were ineffective, but Dr. Rosenfield noted that the stockings were not frayed and were still "sufficient to provide the appropriate amount of pressure against plaintiff's venous pressure in order to reduce build-up of edema and a deterioration of plaintiff's condition." Id. ¶¶ 11-12.  Accordingly, he determined that plaintiff's compression stockings did not need to be replaced.  Id. ¶ 13.  On December 8, 2015, Dr. Rosenfield discontinued plaintiff's pain medication after it was determined that plaintiff was not going to the medication window at distribution time.  Id. ¶ 14.  He prescribed plaintiff no further pain medication.  Id. ¶ 17.

At plaintiff's December 30, 2015 appointment, Dr. Rosenfield observed a two-by-four centimeter ulceration on plaintiff's left ankle.  Dkt. No. 39-1 ¶¶ 18-19.  He prescribed plaintiff a zinc oxide ointment to be applied daily with a dressing of xerofoam wrap and gauze roll as this was "the standard effective treatment for plaintiff's condition." Id. ¶¶ 20, 21.  At the January 2, 2016 dressing change, a non-party nurse noticed that plaintiff's wound opening grew larger, "with a slight drainage of serosanguinous fluid and a slight odor." Id. ¶ 22.  Plaintiff refused the prescribed zinc oxide ointment and signed a refusal form.  Id. ¶ 24.

At plaintiff's next appointment on January 4, 2016, Dr. Rosenfield continued plaintiff on the same course of treatment and scheduled plaintiff for a follow-up appointment the next week.  Dkt. No. 39-1 ¶¶ 26-27.  On January 6, 2016, plaintiff twice refused the zinc

oxide treatment.  Id. ¶ 28.  On January 8, 2016, Dr. Rosenfield noted a "maceration of the 2 x 4 [centimeter] wound area[,] as well as skin granulation."  Id. ¶ 29.  He concluded that plaintiff's wound had not healed because he refused the zinc oxide ointment and continued to smoke.  Id.  Dr. Rosenfield again advised plaintiff to quit smoking, and submitted an order for new compression stockings.  Id. ¶¶ 30, 31.  He also referred plaintiff to a wound clinic to obtain specialized care.  Id. ¶ 32.  Plaintiff continued to attend daily dressing changes  from  January 8, 2016 until January 13, 2016.  Id. ¶ 33.  On January 9, plaintiff permitted a small amount of zinc oxide ointment on the wound, but refused the application on January 10.  Id. ¶ 34.

On January 15, 2016, plaintiff attended an appointment at the wound clinic in Albany Memorial Hospital.  Dkt. No. 39-1 ¶ 35.  Four days later, Dr. Rosenfield reviewed the consultation notes.  Id. ¶ 36.  Thereafter, plaintiff attended weekly appointments at the wound clinic at Albany Memorial Hospital.  Id. ¶ 38.  Dr. Rosenfield met with plaintiff after each wound clinic appointment to further evaluate and treat plaintiff's condition.  Id. ¶ 40. On January 22, 2016, at the request of the wound clinic consultant, Dr. Rosenfield ordered an x-ray of plaintiff's left ankle to determine the  possibility of a bone infection near the ulcer.  Id. ¶ 41.  The x-ray showed no "indicate of acute osteomyelitis, or infection of the bone near the ulcer."  Id. ¶¶ 42-43.  Dr. Rosenfield referred plaintiff for venous ultrasounds for both of his legs to evaluate any circulation problems.  Id. ¶ 44.  On January 29, 2016, Dr. Rosenfield observed plaintiff's need for new compression stockings.  Id. ¶ 45.  He determined that he needed to contact the wound  clinic for a recommendation as to the pressure of plaintiff's new stockings.  Id. ¶ 46.  On February 18, 2016, plaintiff received

new compression stockings.  Id. ¶ 47.  That day, the wound clinic informed Hudson medical staff that plaintiff had deep vein thrombosis in his left leg.  Id. ¶ 48.  Plaintiff was treated at Albany Memorial Hospital.  Id. ¶ 49.

On February 22, 2016, Dr. Rosenfield prescribed plaintiff five days worth of Lovenox to prevent further blood clotting until his prescription of Coumadin became effective.  Dkt. No. 39-1 ¶¶ 51-52.  Plaintiff attended weekly visits at the wound clinic through mid-June 2016, and Dr. Rosenfield provided plaintiff treatment as recommended by the wound clinic staff, including the Coumadin prescription.  Id. ¶ 54.  Dr. Rosenfield further scheduled plaintiff for a vascular consult for potential vascular surgery, and plaintiff attended that consultation on May 12, 2016.  Id. ¶ 55.  Dr. Rosenfield arranged for plaintiff to receive treatment to prepare him for the recommended vascular surgery.  Id. ¶ 57.  On June 17, 2016, plaintiff declined the surgery because his wound had healed.  Id. ¶ 58.  Dr. Rosenfield cancelled plaintiff's surgery, and the wound clinic deemed his treatment complete.  Id. ¶¶ 59, 60.

## II. Discussion[4]

Plaintiff contends that Dr. Rosenfield violated his constitutional rights by denying him medical care and treatment for his vascular disease.  See generally Compl.  Defendant argues that: (1) plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"); (2) plaintiff cannot establish a claim of deliberate

---

[4]  All unpublished opinions cited by the Court in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

indifference against Dr. Rosenfield; and (3) defendant is entitled to qualified immunity. See Dkt. No. 39-6.

### A. Legal Standards

### 1. Summary Judgment Standard

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The moving party has the burden of showing the absence of disputed material facts by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion.  FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A fact is material if it may affect the outcome of the case as determined by substantive law, such that "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "In determining whether summary judgment is appropriate, [the Court will] resolve all ambiguities and draw all reasonable inferences against the moving party."  Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

To avoid summary judgment, a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Carey v. Crescenzi, 923 F.2d 18, 19 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)) (internal quotation marks omitted).  A non-moving party must support such assertions by evidence showing the existence of a genuine issue of material

fact. Id. "When no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Services, Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally," . . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

## 2. N.D.N.Y. Local Rule 7.1(a)(3)

Local Rule 7.1(a)(3) requires a party moving for summary judgment to file and serve a Statement of Material Facts. See N.D.N.Y. L.R. 7.1(a)(3). "The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue." Id. The opposing party is required to file

a response to the Statement of Material facts "admitting and/or denying each of the movant's assertions in matching numbered paragraphs." Id. "Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion." Id. (emphasis omitted).

Plaintiff failed to submit a Statement of Material Facts in conjunction with his Motion for Summary Judgment. Dkt. No. 31. On April 12, 2017, the Court issued a text order notifying the plaintiff that his submission lacked a Statement of Material Facts and directing him to file the document. Dkt. Entry dated Apr. 12, 2017. On April 26, 2017, plaintiff purported to file Statement of Material Facts in support of his Motion for Summary Judgment. Dkt. No. 35. However, the document, entitled "Affirmation in Support of Motion," is identical to the affirmation plaintiff filed on April 6, 2017, which contains two paragraphs and factual allegations unsupported by citation to evidence. Compare Dkt. No. 35 with Dkt. No. 31-1.

The undersigned is not required to "perform an independent review of the record to find proof of a factual dispute." Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470 (2d Cir.2002). Although defendant argues, and the Local Rules provide, that failure to submit a complete and accurate Statement of Material Facts mandates dismissal, pro se plaintiffs are afforded special solicitude. N.D.N.Y. L.R. 7.1(a)(3); Dkt. No. 40 at 4; see subsection III (A) infra. Accordingly, the undersigned does not recommend dismissal of plaintiff's motion on this ground. See Bulter v. Hyde, No. 9:08-CV-0299 (LEK/GHL), 2009 WL 3164753, at *3 (N.D.N.Y. Sept. 29, 2009) (declining to recommend dismissal of the pro se plaintiff's Motion for Summary Judgment due to the plaintiff's failure to file an accurate

10

and complete Statement of Material Facts); <u>Johnson v. Lew</u>, No. 1:13-CV-1072 (GTS/CFH), 2017 WL 3822047, at *2 (N.D.N.Y. Aug. 30, 2017) ("Out of special solicitude to Plaintiff as a <u>pro se</u> civil rights litigant, however, the Court will treat his opposition as a response to Defendant's Rule 7.1 Statement, carefully reviewing it for any record-supported disputation of Defendant's Rule 7.1 Statement."). Nevertheless, because defendant has cross-moved for summary judgment, and in light of the special solicitude accorded to plaintiff as a <u>pro se</u> litigant, the undersigned will accept as true the uncontroverted facts in plaintiff's response to defendant's Statement of Material Facts. However, to the extent that those facts are inconsistent with the facts as set forth in defendant's Rule 7.1 Statement of Material Facts, defendant's facts are accepted as true. <u>See</u> N.D.N.Y.L.R. 7.1(a)(3) (*"The Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."*) (emphasis in original).

## B. Exhaustion

As a threshold matter, defendant contends that plaintiff has failed to exhaust his administrative remedies. Dkt. No. 39-6 at 4-11. Plaintiff argues that he exhausted his administrative remedies through a hearing with Inmate Grievance Review Committee ("IGRC"). Dkt. No. 31-1 at 4. In opposition to defendant's Motion for Summary Judgment, plaintiff contends that he was unable to exhaust his administrative remedies because his grievances were "deliberately interfered with on multiple occasions." Dkt. No. 46-1 at 11. DOCCS "deliberately made it impossible for him to fulfill" the grievance process. <u>Id.</u>

Plaintiff contends that DOCCS, as defendant's employer, "deliberately made it impossible for him to fulfill" the grievance process. Id. In reply, defendant argues plaintiff's reliance on Williams v. Priatno and Reid v. Marzano "is misplaced, as the situation present in those cases [is] not present here, and the IGP procedures provided plaintiff with clear instructions as to how to proceed to exhaust his administrative remedies in his circumstance." Dkt. No. 47 at 3.

While at Hudson, plaintiff did not appeal any grievances to Central Office Review Committee ("CORC") concerning the allegations raised in the complaint. Dkt. No. 39-1 ¶ 68. CORC received a letter from plaintiff dated February 24, 2016, in which he informed the committee that he wished to appeal a grievance as he had not received a response from the Superintendent. Id. ¶¶ 70-71. The Assistant Director of the Inmate Grievance Program ("IGP") Jeffery Hale responded to plaintiff and told him that although he had filed two grievances, neither of them were ever appealed to the Superintendent or to CORC. Id. ¶ 74. Hudson received and filed plaintiff's first grievance, HD-2391-16, regarding Dr. Rosenfield's medical care on January 4, 2016. Id. ¶¶ 80-81. Plaintiff alleges that this grievance was not answered within the sixteen-day time frame required in DOCCS Directive 4040. Dkt. No. 31-1 at 3. On January 22, 2016, Hudson IGRC held a grievance hearing in plaintiff's absence, as it was believed he had been transferred to a different facility for medical treatment. Dkt. No. 39-1 ¶ 82. The IGRC denied plaintiff's grievance and sent him a copy of the decision, which included instructions on how to appeal the decision to the Superintendent. Id. ¶¶ 83, 84.

Plaintiff took issue with the fact that the hearing occurred without him present, and

wrote a contact slip to non-party Judith Doyle, the Hudson IGP Supervisor, commenting that he was only on a temporary outside medical trip. Id. ¶ 85. In response, Ms. Doyle instructed plaintiff on how to file an appeal to the Superintendent. Id. ¶ 86. Plaintiff wrote Ms. Doyle a second contact slip, reiterating that the hearing should not have occurred in his absence. Id. ¶ 87. Ms. Doyle again instructed plaintiff on how to file an appeal with the Superintendent. Id. The grievance officer never received an appeal of grievance HD-2391-16. Id. ¶ 88.

Hudson IGRC received and filed plaintiff's second grievance, HD-2396-16, which sough redress regarding the grievance hearing held in his absence on February 22, 2016. Dkt. No. 39-1 ¶¶ 90-91. Plaintiff alleges that this grievance was not answered within the sixteen-day time frame required in DOCCS Directive 4040. Dkt. No. 31-1 at 4. The IGRC reached a split decision and automatically forwarded the grievance to the Superintendent, pursuant to IGP policy. Dkt. No. 39-1 ¶ 92. On March 1, 2016, plaintiff signed a statement acknowledging that the deadlocked response would be forwarded to the Superintendent. Id. ¶ 93. The Superintendent directed the IGRC to rehear grievance HD-2391-16 with plaintiff present. Id. ¶ 94. On April 7, 2016, the IGRC conducted a second hearing on grievance HD-2391-16. Id. ¶ 95. Plaintiff briefly attended the hearing, but left without discussing his medical complaints. Id. ¶ 96. Plaintiff's grievance was denied. Id. ¶ 97. Plaintiff did not appeal the IGRC's decision to the Superintendent, nor did the Superintendent receive a letter from plaintiff concerning the appeal of grievance HD-2391-16. Id. ¶¶ 99-100.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any

administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration.  Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82 (2006).  The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532).  Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages.  Porter, 534 U.S. at 524.  To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated.  Jones v. Bock, 549 U.S. 199, 218 (2007) (internal citation omitted).

Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. Cty. of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted).  Until recently, courts in this District followed a three-part test established by the Second Circuit in Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004).  Under the test established in Hemphill, a plaintiff's failure to exhaust could be excused if a plaintiff established that his or her failure to exhaust was justified by "special circumstances." Id. However, the Supreme Court recently held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, __ U.S. __,136 S. Ct. 1850, 1862 (2016).  As such, the special circumstances exception in Hemphill is no longer consistent with the statutory requirements of the PLRA. Williams v. Priatno, 829 F.3d 118, 123 (2d Cir. 2016).

14

Although the Supreme Court's decision in Ross eliminates the "special circumstances" exception, courts must still consider the PLRA's "textual exception to mandatory exhaustion." Ross, 136 S. Ct. at 1858. Under this exception, courts must determine whether administrative remedies were "available" to a prisoner. Id. The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738 (2001)). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

Here, there is no genuine dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program. N.Y. COMP. CODES R. & REGS. tit 7, § 701.5. First, the inmate must file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged incident. Id. at § 701.5(a)(1). An IGP representative has sixteen calendar days to informally resolve the issue. Id. at § 701.5(b)(1). If no informal resolution occurs, the IGRC must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. Id. §§ 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven

calendar days of receipt of the determination.  Id. § 701.5(c)(1).  If the superintendent's determination is unfavorable, the inmate may appeal to CORC within seven days after receipt of the superintendent's determination.  Id. §§ 701.5(d)(i)-(ii).  CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received."  Id. § 701.5(d)(3)(ii).

### 1. Did Plaintiff Exhaust his Administrative Remedies?

Both parties concede that plaintiff completed the first level of the grievance procedure – filing two grievances with the IGRC – which were properly recorded, assigned grievance numbers, and decided.  Pl. Dep. at 113-14, 118-19, 120-21; Dkt. No. 39-2. Although plaintiff contends that he sent letters appealing grievance HD-2391-16 to the Superintendent and CORC on February 1, 2016 and February 26, 2016, these letters do not satisfy the exhaustion requirement.  See Dkt. No. 39-4 at 9.  It is well-established in the Second Circuit that any informal resolution or relief outside of the administrative procedures does not satisfy exhaustion requirements.  See, e.g., Macias v. Zenk, 495 F.3d 37, 43 (2d Cir. 2007) (holding that regardless whether prison officials know of the plaintiff's complaints in a "substantive sense," procedural exhaustion of remedies must still occur); Day v. Chaplin, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (noting that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures.").  Plaintiff did not provide the Court with a copy of the February 1, 2016 letter

he contends he sent to the Superintendent.  Although plaintiff's complaint contains a letter detailing "attempts by the Superintendent, Ms. Doyle, and non-party Sgt. Alexander to prolong [his] complaint hoping [he] would just let it go," there is no heading, it is undated, and it is unclear to whom the letter is written or whether this is the February 1, 2016 letter to which plaintiff refers.  Dkt. No. 1-1 at 21.  The letter details plaintiff's interactions with non-party Hudson IGP Supervisor Judith Doyle and non-party Sgt. Alexander, and how plaintiff felt Hudson prison staff "tr[ied] to hinder [him] from getting relief."  Id. at 22.  There is no mention of plaintiff's desire to appeal any grievance.  See id.

Even if the undersigned concluded that plaintiff had sufficiently shown that he sent an appeal to the Superintendent, and, after receiving no response, appealed to CORC, thus following the procedures set forth in  7 N.Y.C.R.R. § 701.6(g)(2)), plaintiff's February 24, 2016 letter to CORC does not serve as a sufficient method for exhausting his administrative remedies.  Although use of an official grievance form is not required to satisfy exhaustion, plaintiff's February 24 letter to CORC details his procedural complaints with the January 22, 2016 grievance hearing that IGRC held in his absence (HD-2396-16), not Dr. Rosenfield's deliberate indifference to his medical to his medical needs – the subject of the January 4, 2016 grievance (HD-2391-16).  Id. at 14.  The substance of the February 24 letter fails to put CORC on notice of the issues that plaintiff wished to appeal, depriving CORC the opportunity to fully and fairly consider grievance HD-2396-16.  Further, the two contact slips plaintiff delivered to non-party Hudson IGP Supervisor Doyle are not sufficient to exhaust his administrative remedies as Ms. Doyle, in response to both slips, informed plaintiff that if he was dissatisfied with the IGRC decision, he needed to "follow

17

the directions on the form and appeal the decision to the Superintendent."  Cohan Decl. at 22-23.

Moreover, even if the February 24, 2016 letter had put CORC on notice of the subject matter of plaintiff's appeal, notice, in and of itself, is insufficient to satisfy the exhaustion requirement.  See Macias, 495 F.3d at 44.  In Macias, the Second Circuit analyzed how the Supreme Court's decision in Woodford v. Ngo, 548 U.S. 811 (2006) affected precedent that had allowed inmates "to procedurally exhaust their claims by taking enough informal steps to put prison officials on notice of their concerns, regardless of whether they utilize the prison's formal grievance procedures."  Id. (quoting Braham v. Clancy, 425 F.3d 177, 183 (2d Cir. 2005)) (internal quotation marks and citation omitted). The Second Circuit held that, "after Woodford, notice alone is insufficient because '[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance' and '[t]he prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.'" Id. (quoting Woodford, 548 U.S. at 95).  The Macias Court determined that the plaintiff did not satisfy the exhaustion requirement by submitting inmate request forms and complaining informally to prison officials.  Id.  Similarly here, plaintiff's informal correspondence outside of the proper regulatory channels does not satisfy PLRA's exhaustion requirement because even if plaintiff's February 24 letter alerted CORC to the substance of his complaints, notice alone does not satisfy the exhaustion requirement.  See Macias, 495 F.3d at 44. Therefore, plaintiff's February 24 letter does not satisfy PLRA's exhaustion requirement. Id.; see Geer v. Chapman, No. 9:15-CV-952 (GLS/ATB), 2016 WL 6091699, at *5

(N.D.N.Y. Sept. 26, 2016), report and recommendation adopted, 2016 WL 6090874 (N.D.N.Y. Oct. 18, 2016) (citing Macias, 495 F.3d at 44-45) ("It is well-settled that writing letters to prison officials, or other officials, is insufficient to properly exhaust administrative remedies."). Because plaintiff has not provided evidence of the February 1, 2016 letter he alleges he sent to the Superintendent, the undated letter he provided does not address the substance of his grievance against Dr. Rosenfield, and notice is insufficient to constitute proper exhaustion, the unprovided February 1 letter and February 24 letter do not suffice to exhaust plaintiff's administrative remedies in relation to his claims against Dr. Rosenfield.

Even if the undersigned were to consider plaintiff's February 24 letter to CORC an attempt to comply with the exhaustion requirements after the Superintendent's nonresponse, Peter Cohan, the grievance coordinator at Hudson, and Karen Bellamy, the Director of the IGP, declared that plaintiff did not properly file any administrative appeals regarding the claims raised in this matter. Dkt. No. 39-4 ("Bellamy Decl.") at 3; Dkt. No. 39-5 ("Cohan Decl.") at 4, 5-6. Moreover, the Assistant Director of the IGP informed plaintiff on July 14, 2016 that he had not appealed grievance HD-2391-16 or HD-2396-16. Bellamy Decl. at 13. Thus, plaintiff's informal correspondence – sending letters to CORC and the Hudson IGP Supervisor – does not satisfy PLRA's exhaustion requirements. As plaintiff has not provided evidence of exhaustion, the undersigned concludes that plaintiff has failed demonstrate that the January 4, 2016 grievance was properly exhausted.

## 2. Availability of Administrative Remedies

Plaintiff further contends that administrative remedies were unavailable to him because the Hudson IGRC failed to provide him with the IGRC Response Form required to appeal his grievance to the Superintendent. Dkt. No. 46-1 at 8-9. Plaintiff's argument must fail because plaintiff had the opportunity to appeal his grievances to the Superintendent and/or CORC on a plain piece of paper. Ceparano v. Cty. of Suffolk, No. 10-CV-2030 (SJF)(AKT), 2013 WL 6576817, at *5 (E.D.N.Y. Dec. 13, 2013) ("Moreover, even if plaintiff was unable to obtain official grievance forms, New York law permits the filing of grievances on any plain piece of paper."); see also 7 N.Y.C.R.R. § 701.5(a)(1) ("If this [grievance] form is not readily available, a complaint may be submitted on plain paper.").

Despite an inmate's ability to file an appeal by using "any place piece of paper" (Ceparano, 2013 WL 6576817, at *5), plaintiff's unprovided February 1 letter and the provided February 24 letter do not serve to exhaust his administrative remedies. Even if the undersigned had determined that plaintiff's February 24 letter to CORC provided prison officials with notice of his complaints, as discussed (see subsection II.B.1. supra) notice alone is insufficient to satisfy PLRA's exhaustion requirements. Macias, 495 F.3d at 44.

## 3. DOCCS Directive 4040/Misunderstanding

Plaintiff contends that he is excused from the exhaustion requirements because (1) his grievances were not answered by the Hudson IGRC within the sixteen-day time frame required in DOCCS Directive 4040, and (2) he misunderstood how to appeal his

grievance. Dkt. No. 31-1 at 4; Pl. Dep. at 88. Although both grievances were answered, at most, two days after the time limit in DOCCS Directive 4040, the Hudson IGRC's failure to follow a DOCCS directive does not amount to a constitutional violation. Sanders v. Gifford, No. 11-CV-0326, 2014 WL 5662775, at *4 (N.D.N.Y. Nov. 4, 2014); Dkt. No. 39-5 at 15, 18. Further, plaintiff's apparent argument that he did not know how to appeal or was confused by the process is without force. Pl. Dep. at 88. Non-party Hudson IGP Supervisor Judith Doyle explained to plaintiff in writing on two occasions that he had the option to "follow the directions on the form and appeal the decision to the Superintendent." Cohan Decl. at 22-23; cf. Williams v. Priatno, 829 F.3d 118, 125-26 (2d Cir. 2016) (concluding that because the DOCCS regulations "do not adequately outline the process to appeal or otherwise exhaust" grievances that were never filed, the grievance procedures were technically not available to the plaintiff, and he was excused from the exhaustion requirements); Reid v. Marzano, No. 9:15-CV-761 (MAD/CFH), 2017 WL 1040420, at *3 (N.D.N.Y. Mar. 7, 2017) (finding that "although Plaintiff clearly knew how to file a grievance while in the SHU, . . . it is clear that Plaintiff did not know how to proceed when he never received a response. Plaintiff's general knowledge of how to file a grievance was rendered useless if he was not properly informed how to proceed after not receiving a response."); Contino v. City of New York, No. 11 Civ. 8537 (DLC), 2013 WL 4015816, at *7 (S.D.N.Y. Aug. 7, 2013) ("A plaintiff's failure to understand the contours of the PLRA is not a special circumstance excusing compliance with the PLRA's exhaustion requirement."). Because non-party Ms. Doyle explicitly outlined to plaintiff in writing how to appeal an unsatisfactory decision, and because plaintiff does not contend that he did not receive these letters, it

21

cannot be said that the grievance procedures were unavailable to plaintiff.

There is no indication in the record that Hudson staff prevented plaintiff from further appeals, made the grievance process unavailable, or outright ignored his grievances at any step.  See Lane v. Doan, 287 F. Supp. 2d 210, 213 (W.D.N.Y. 2003) (concluding that the plaintiff's informal channels of communication constituted "reasonable attempts" at proper exhaustion when DOCCS ignored his prior grievances); Nelson v. Smith, No. 6:12-CV-6581(MAT), 2014 WL 2807557, at *2 (W.D.N.Y. June 20, 2014) (internal quotation marks and citation omitted) ("Where a party makes a clear and positive showing that pursuing available administrative remedies would be futile, the purposes behind the requirement of exhaustion are no longer served, and thus a court will release the [party] from the requirement.").  To the extent that plaintiff argues that the unprovided February 1, 2016 letter to the Superintendent was discarded by prison officials (Dkt. No. 46-1 at 9), this argument is insufficient to excuse his failure to comply with PLRA's exhaustion requirements.  Plaintiff has not introduced evidence identifying that any Hudson staff member is responsible for throwing away his grievances, and, therefore, has failed to establish that the grievance process was unavailable. Belilie v. Griffin, No. 9:11-CV-0092 (TJM/DEP), 2013 WL 1776086, at *8 (N.D.N.Y. Feb. 12, 2013) (finding that the plaintiff's "mere threadbare allegations that his grievances were intercepted and discarded, without evidence to support such allegation . . . are insufficient to excuse his failure to comply with the IGP."); see Veloz v. New York, 339 F. Supp. 2d 505, 514 (S.D.N.Y. 2004) ("Even assuming [the plaintiff] did submit grievances, he offers no evidence that any particular officer thwarted his attempts to file[.]").  On receiving no response from IGRC within sixteen

days, plaintiff was required to appeal his grievance to the next level, the Superintendent.[5] Defendant has met his burden of showing that plaintiff has failed to exhaust his administrative remedies. Accordingly, as exhaustion is a prerequisite to filing an action in federal court (Woodford, 548 U.S. at 85), it is recommended that defendant's Motion for Summary Judgment be granted.

### C. Eighth Amendment

As an alternative ground to dismissal for failure to exhaust administrative remedies, defendant argues that plaintiff cannot establish deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Dkt. No. 39-6. Plaintiff contends that Dr. Rosenfield violated his Eighth Amendment rights by refusing to replace his compression stockings and treat his ulcer with medication, and delaying a referral to a wound clinic. See generally Compl.; Dkt. No. 31. Defendant argues that plaintiff received proper treatment for his vascular disease, and that plaintiff further exacerbated his condition by rejecting the prescribed treatment plan. See Dkt. No. 39-6 at 18.

The Eighth Amendment forbids the infliction of "cruel and unusual punishments" on those convicted of crimes, "which includes punishments that involve the unnecessary and wanton infliction of pain." U.S. CONST. amend. VIII; Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (citing Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "In order to establish

---

[5] Although plaintiff contends that he wrote to the Superintendent, he has failed to offer evidence of such letter. Moreover, to the extent that plaintiff contends that, after the Superintendent's nonresponse, he appealed to CORC, that February 24 letter does not satisfy PLRA's exhaustion requirements. See subsection II.B.1., supra.

an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The deliberate indifference standard consists of both an objective and subjective component. Hathaway, 37 F.3d at 66. The objective component requires the plaintiff to demonstrate that his alleged medical need is "sufficiently serious." Id. The subjective component requires a showing that the defendant has acted with a "sufficiently culpable state of mind." Id.

### 1. Objective Component

For an inmate to state a cognizable claim of deliberate indifference, he must make a showing of serious illness or injury. Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003). Deprivation of medical treatment is "sufficiently serious" if the injury or illness is one where there is "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway, 37 F.3d at 66 (internal citation omitted). "Determining whether a deprivation is an objectively serious deprivation entails two inquiries." Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006)). First, the Court must determine "whether the prisoner was actually deprived of adequate medical care." Kucharczyk v. Westchester Cnty., 95 F. Supp. 3d 529, 537 (S.D.N.Y. 2015) (citation and internal quotation marks omitted). "Prison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is reasonable." Jones v. Westchester Cnty. Dep't of Corrs., 557

F. Supp. 2d 408, 413 (S.D.N.Y. 2008). However, a prison official may be held liable "if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). Second, the Court must determine "whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or likely will cause the prisoner." Id.

> If the inadequate medical care is a complete failure to provide treatment, courts examine whether the inmate's medical condition is sufficiently serious. Factors relevant to the seriousness of a medical condition include whether a reasonable doctor or patient would find [it] important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain. However, [i]n cases where the alleged inadequacy is in the medical treatment given, the seriousness inquiry is narrower. For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.

Idowu, 2013 WL 4780042, at *6 (internal citation and quotation marks omitted).

The undersigned will first assess whether plaintiff was actually deprived of adequate medical care. Kucharczyk, 95 F. Supp. 3d at 537. Plaintiff alleges that he was deprived of adequate medical when Dr. Rosenfield (1) refused to give him new compression stockings, and (2) failed to refer him immediately to an outside wound clinic. See Compl. at 6. Plaintiff claims that the deprivations caused him to suffer a constant sharp, "stabbing, burning" pain in his left ankle and foot that led to the formation of an ulceration, and,

ultimately, a blood clot.  See Compl. at 5-7; Dkt. No. 31-1 ("Rosenfield Decl.") at 3.

The undersigned finds that plaintiff failed to provide evidence from which a fact-finder could reasonably conclude that Dr. Rosenfield's alleged failures constitute a sufficiently serious deprivation of medical care for the reasons that follow.  Salahuddin, 467 F.3d at 279.

### a. Compression Stockings

Plaintiff has not demonstrated that he was deprived of adequate medical care based on a delay in receiving new compression stockings.  As plaintiff alleges a delay in ongoing treatment, in assessing the seriousness of plaintiff's medical condition, the Court must focus on the challenged delay, rather than the underlying medical condition itself.  Idowu, 2013 WL 4780042, at *6.  Plaintiff testified that he first informed Dr. Rosenfield that he needed new compression stockings on October 30, 2015, and that after examining the stockings, Dr. Rosenfield determined that they were not worn out and not in need of replacing.  Pl. Dep. at 30, 32.  Plaintiff's medical records confirm that Dr. Rosenfield again examined plaintiff's compression stockings on November 24, 2015, noting that "they were not frayed or inelastic, and still sufficient to provide the appropriate amount of pressure against plaintiff's venous pressure in order to reduce build-up of edema and a deterioration of plaintiff's condition."  Rosenfield Decl. at 2; Pl. Med. Rec. at 42.  On January 8, 2016, Dr. Rosenfield ordered plaintiff new compression stockings, and plaintiff received the stockings on February 18, 2016.   Rosenfield Decl. at 4; Pl. Dep. at 33.  Plaintiff contends that the nearly three-and-a-half-month delay in receiving compression stockings led to the

development of an ulcer that required six months of treatment.  See Compl. at 6.

Plaintiff's claim amounts to a disagreement with Dr. Rosenfield's medical judgment, and such disagreement "over . . . the timing of intervention [of treatment] are not adequate grounds for a Section 1983 claim." Baumann v. Walsh, 36 F. Supp. 2d 508, 512 (N.D.N.Y. 1999); see Idowu v. Middleton, No. 12 Civ. 01238(LGS), 2013 WL 4780042, at *8 (S.D.N.Y. Aug. 5, 2013) (finding that the plaintiff's claim that the delay in receiving an EEG amounted to a mere disagreement with the defendant doctor's medical judgment, and was not actionable under Section 1983).  On two separate occasions, Dr. Rosenfield examined plaintiff's compression stockings and determined that they did not need to be replaced. Pl. Dep. at 30, 32; Rosenfield Decl. at 2; Pl. Med. Rec. at 42.  Dr. Rosenfield determined that the "stockings should be replaced when they no longer provide the appropriate level of compression and, based upon [his] evaluation of plaintiff's compression stockings, they did not need to be replaced at [that] time," thereby, negating plaintiff's contention that his compression stockings needed to be changed ever six months. Rosenfield Decl. at 2. Plaintiff has not presented sufficient evidence to suggest that Dr. Rosenfield's actions were unreasonable.  His disagreement with the state of his compression stockings does not amount to an actionable claim under Section 1983. Idowu, 2013 WL 4780042, at *8.

### b. Wound Clinic Transfer

Plaintiff also has not demonstrated that he was deprived of adequate medical care based on the delay in transfer to the wound clinic.  As plaintiff alleges a delay in ongoing treatment, in assessing the seriousness of plaintiff's medical condition, the Court must

focus on the challenged delay, rather than the underlying medical condition itself. Idowu, 2013 WL 4780042, at *6; see Discussion supra Section III.D.1. Dr. Rosenfield first observed an ulceration on plaintiff's left ankle on December 29, 2015. Compl. at 5; Rosenfield Decl. at 3. Dr. Rosenfield implemented a treatment plan that he believed would best treat plaintiff's condition – daily dressing changes and the application of a zinc oxide ointment, as well as abstaining from tobacco use. Rosenfield Decl. at 2, 3. On January 8, 2016, Dr. Rosenfield referred plaintiff for specialized treatment. Id. The record establishes that during the nine days between the formation of the ulceration and the referral to the wound clinic, plaintiff attended daily dressing changes on at least four occasions, and largely refused the prescribed zinc oxide ointment. Rosenfield Decl. at 3-5; Pl. Dep. at 43-49. There is no indication that Dr. Rosenfield denied plaintiff treatment during the nine days; rather, the record demonstrates that plaintiff simply disagreed with Dr. Rosenfield's medical judgment as to the treatment plan. Baumann v. Walsh, 36 F. Supp. 2d at 512. Therefore, because disagreement with a doctor's medical judgment does not amount to a claim under Section 1983, plaintiff has failed to demonstrate that Dr. Rosenfield denied him adequate medical care.

In addition, plaintiff testified that he continued to use tobacco products, despite acknowledging that such use delays an ulcer's healing. Pl. Dep. at 37. Therefore, the record demonstrates that plaintiff's own conduct in declining to comply with the medical treatment plan by refusing zinc oxide and continuing to smoke exacerbated the wound. Nelson v. Deming, 140 F. Supp. 3d 248, 259 (W.D.N.Y. 2015) (granting the defendant's motion for summary judgment where the plaintiff's medical records "reveal that [his]

28

medical issues were created by Plaintiff's own actions in failing to comply with directives relating to the care of his wound," and, therefore, the plaintiff could not satisfy the objective prong of the deliberate indifference analysis).  Although plaintiff seems to suggest that Dr. Rosenfield intentionally delayed his medical care because plaintiff smoked cigarettes, there is nothing in the record that substantiates this claim, nor is there any indication that Dr. Rosenfield delayed plaintiff's treatment as a form of punishment.  See Compl. at 8; Crique v. Magill, No. 12 Civ. 3345(PAC)(GWG), 2013 WL 3783735, at *3 (S.D.N.Y. July 9, 2013) (internal citation and quotation marks omitted) ("While delays in providing necessary medical care may in some cases demonstrate deliberate indifference, the Second Circuit has reserved those instances to cases when prison officials deliberately delayed care as a form of punishment.").  As to plaintiff's contention that because he continued to smoke, Dr. Rosenfield refused to treat him until he complained to the Hudson Deputy of Administration, as indicated, the record establishes that Dr. Rosenfield continued to provide plaintiff with care, despite the fact that plaintiff continued to smoke.    Rosenfield Decl. at 3-4 (detailing plaintiff's treatment); Compl. at 7-8.  Plaintiff's mere disagreement with that plan does not amount to a constitutional violation.  Idowu, 2013 WL 4780042, at *8

Accordingly, plaintiff has failed to establish that he suffered a sufficiently serious deprivation of medical care.

## 2. Subjective Component

A prison official acts with a sufficiently culpable state of mind when "the official

29

knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837. "Deliberate indifference is a mental state equivalent to subjective recklessness" which "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." <u>Id.</u> (quotation marks omitted). A defendant "may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was 'insubstantial or non-existent.'" <u>Wright v. Genovese</u>, 684 F. Supp. 2d 137, 154 (N.D.N.Y. 2010) (citing <u>Farmer</u>, 511 U.S. at 844)). Therefore, "the defendant's belief that his conduct posed no risk of serious harm need not be sound so long as it is sincere, and even if objectively unreasonable, a defendant's mental state may be nonculpable." <u>Id.</u> at 154-155 (quoting <u>Salahuddin</u>, 467 F.3d at 281) (internal quotation marks omitted).

Further, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment claim." <u>Chance</u>, 143 F.3d at 703. Therefore, any "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of intervention, are not adequate grounds for a Section 1983 claim." <u>Baumann</u>, 36 F. Supp. 2d at 512.

Defendant argues that plaintiff's deliberate indifference claim based on his alleged refusal to order new compression stockings and refer him for specialized treatment amounts to "nothing more than disagreements with his provider as to how to properly treat

30

his condition and are insufficient to support a claim for deliberate indifference to medical need." Dkt. No. 39-6 at 19. The undersigned agrees.

### a. Compression Stockings

Plaintiff fails to establish that Dr. Rosenfield knew of and disregarded an "excessive risk" to his health by declining to immediately replace plaintiff's compression stockings. Farmer, 511 U.S. at 837. Plaintiff testified that at the October 30, 2015 appointment, Dr. Rosenfield "made [him] take [his compression stockings] off[,] looked at [them], [and] played with [them]" before determining that they were not worn out or in need of replacing. Pl. Dep. at 30, 32. Moreover, plaintiff's medical records establish that at the November 24, 2015 appointment, Dr. Rosenfield acknowledged plaintiff's concerns about the inadequacy of his compression stockings, but observed the stockings were not frayed or inelastic, and "still sufficient to provide the appropriate amount of pressure against plaintiff's venous pressure in order to reduce build-up of edema and a deterioration of plaintiff's condition." Rosenfield Decl. at 2 (citing Dkt. No. 41 ("Pl. Medical Records") at 42). Thus, based on his direct observation of the compression stockings on October 30, 2015 and November 24, 2015, Dr. Rosenfield was not aware of a substantial risk of harm when he recommended that plaintiff continue using his current compression stockings. Nielsen, 746 F.3d at 63. Further, on January 8, 2016, Dr. Rosenfield determined that plaintiff's compression stockings needed replacement *at that time*, and ordered a new pair. Dkt. No. 39-3 at 4. Plaintiff's belief that Dr. Rosenfield should have ordered him compression stockings earlier or examined him differently does not amount to an Eighth Amendment violation.

31

Baumann, 36 F. Supp. 2d at 512; Chance, 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim.").

Plaintiff asserts that his compression stockings must be changed every six months, suggesting that defendant's failure to replace the stockings at or near six months amounted to deliberate indifference.  Compl. at 7; Pl. Dep. at 23.  However, it cannot be said that Dr. Rosenfield knew of and disregarded an "excessive risk" to plaintiff's health and safety because the only evidence plaintiff proffers in support of this statement is a medical consultant report which states that "plaintiff needs compression stockings at least every six months to help prevent reoccurrence of ulcer."  Dkt. No. 1-1 at 30.  This consultant report is dated January 29, 2016, fourteen days after Dr. Rosenfield transferred plaintiff to the wound clinic.  Id.  Therefore, because this consultant report could not have been provided to Dr. Rosenfield on October 30, 2015 or November 24, 2015, when plaintiff demanded new stockings, Dr. Rosenfield could not have been aware of a substantial risk of serious harm if plaintiff's compression stockings were not changed every six months. See Farmer, 511 U.S. at 837.  Further, the fact that one medical professional believed compression stockings must be changed biannually does not mean that Dr. Rosenfield's differing view is incorrect or deliberately indifferent to plaintiff's serious medical needs.

In his opposition papers, plaintiff provides a separate consultation report dated September 5, 2012, purporting to establish that his stockings must be changed every six months.  Dkt. No. 46-2 at 9.  All the September 5, 2012 report establishes is that the author of the report determined that plaintiff needed new stockings *at that time* as they were "too old."  Id.  The report does not validate plaintiff's claim that his compression stockings must

be changed every six months, but instead, details the doctor's own medical opinion after review of plaintiff's stockings *at that time*. See Chance, 143 F.3d at 703 ("[M]ere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment claim.") (internal citation omitted). Plaintiff offers no evidence that the Dr. Rosenfield's decision to continue plaintiff in his compression stockings on October 30, 2015 and November 24, 2015 caused an excessive risk to his health, especially as he obtained new stockings shortly thereafter. Further, Dr. Rosenfield stated that he believes compression stockings need to be replaced when they are worn out and "no longer provide the appropriate level of compression." Rosenfield Decl. at 2. Plaintiff's disagreement, or the differing opinion of another medical provider, does not amount to a constitutional claim. Thus, plaintiff has failed to raise a material question of fact whether Dr. Rosenfield knew of and disregarded an excessive risk to his health or safety when he denied plaintiff new compression stockings on October 30, 2015 and November 24, 2015. See Farmer, 511 U.S. 837.

### b. Wound Clinic Transfer

After he noticed the formation of an ulceration on his left ankle, plaintiff requested that Dr. Rosenfield transfer him to a wound clinic "because the facility [infirmary] [did] not have the proper medical supplies to care for an open wound." Compl. at 5; Dkt. No. 31-1 at 2. Instead, after evaluating plaintiff's condition, Dr. Rosenfield determined that daily application of zinc oxide ointment and a daily dressing of xeroform wrap and gauze roll

were the appropriate methods to treat plaintiff's ulceration. Rosenfield Decl. at 3. Plaintiff refused the zinc oxide treatment on at least three occasions before his January 8, 2016 follow-up appointment, and Dr. Rosenfield determined that the ulcer was not healing because plaintiff failed to use the prescribed medication and quit smoking. Pl. Dep. at 44-45; Rosenfield Decl. at 3-4. That day, Dr. Rosenfield submitted a referral for a wound clinic. Rosenfield Decl. at 4.

Plaintiff's allegations demonstrate that Dr. Rosenfield adequately examined plaintiff's ulcer and made the discretionary medical decision to treat the condition with zinc oxide ointment rather than immediately refer him to an outside clinic. See Church v. Hegstrom, 416 F.2d 449, 450-51 (2d Cir. 1969) ("[Section] 1983 likewise does not authorize federal courts to interfere in the ordinary medical practices or other matters of internal discipline of state prisons."). Although plaintiff repeatedly informed Dr. Rosenfield that other facilities had immediately transferred him to the wound clinic, Dr. Rosenfield believed that he was providing the "standard effective treatment for plaintiff's condition" in prescribing the zinc oxide ointment. Rosenfield Decl. at 3 (citing Pl. Medical Records at 40). This belief does not automatically amount to a culpable mental state, even if it was objectively unreasonable. Wright, 694 F. Supp. 2d at 154-55. Moreover, it cannot be said that Dr. Rosenfield knew of and disregarded an "excessive risk" to plaintiff's health because once Dr. Rosenfield determined that the wound was not healing under the current medical treatment, he referred plaintiff to specialized care at an outside wound clinic. Rosenfield Decl. at 3. Plaintiff's conclusory allegation that he was "always sent out immediately for treatment when an [ulcer] developed, without delay" does not automatically

34

constitute a constitutional violation because whether or not plaintiff was immediately transferred by other facilities does not mean that immediate transfer was the proper medical treatment. See Dkt. No. 31-1 at 3. Inmates do not have the constitutional right to the treatment of their choice. Wright, 694 F. Supp. 2d at 155. That plaintiff may have "preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation." Id. (citing Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986)).

Further, even if Dr. Rosenfield's continuing plaintiff on zinc oxide ointment rather than immediately transferring him to the wound clinic caused plaintiff unintended harm, negligence is not actionable under section 1983. Burroughs v. Petrone, 138 F. Supp. 3d 182, 211 (N.D.N.Y. 2015) ("Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm.") (internal quotation marks and citation omitted); see Daniels v. Williams, 474 U.S. 327 (1986) (concluding that negligence is not a cognizable claim under section 1983); Kucharczyk, 95 F. Supp. 3d at 537 ("[M]ere negligence is not enough to state a claim for deliberate indifference."). That Dr. Rosenfield may have been negligent[6] in "diagnosing or treating" plaintiff's ulcer – or ultimately his vascular disease – does not amount to deliberate indifference. Adams v. Rock, No. 9:12- CV-1400 (GLS/ATB), 2015 WL 1312738, at *7 (N.D.N.Y. Mar. 24, 2015) (citing Farmer, 511 U.S. at 835) ("Even negligence in diagnosing or treating an inmate's medical condition does not constitute deliberate indifference."). Thus, plaintiff has failed

---

[6] The undersigned makes no assessment about whether plaintiff can state a claim as to negligence.

to raise a material question of fact whether Dr. Rosenfield knew of and disregarded an excessive risk to his health or safety as to the alleged denial of referral to a wound clinic. Farmer, 511 U.S. 837. Accordingly, plaintiff has failed to demonstrate that Dr. Rosenfield was deliberately indifferent to a serious medical condition, and it is recommended that defendant's motion on this ground be granted.

### 3. Failure to Provide Pain Medication

Although plaintiff does not suggest that Dr. Rosenfield's failure to provide him pain medication ultimately resulted in the formation of the ulceration, he does allege that the denial of pain medication resulted in "four (4) months in intense pain and suffering that interfered with daily activities." Compl. at 6; Dkt. No. 31-1 at 2. Plaintiff contends that prior to his transfer to Hudson, the medical staff at Cayuga Correctional Facility "had automatically prescribed medication for his ankle and foot," and that he received two dosages of Neurontin a day. Compl. at 7. Defendant's declaration and the medical records provide that, during plaintiff's initial visit on October 30, 2015, Dr. Rosenfield continued plaintiff's prescription of Neurontin after he complained of pain in his toes. Rosenfield Decl. at 2. After plaintiff failed to report to the medication window for the administration of the Neurontin, Dr. Rosenfield discontinued the prescription. Id. (citing Pl. Med. Rec. at 41) (stating that plaintiff was a "no show consecutively for Neurontin"). Pursuant to plaintiff's medical records, and Dr. Rosenfield's testimony, plaintiff did not complain about any further pain symptoms during his care at Hudson. Rosenfield Decl. at 2; see Pl. Med. Rec. Plaintiff denies that he was in pain on October 30, 2015, and

36

states that he was not aware Dr. Rosenfield prescribed him pain medication, which is why he did not come to the medication window. Dkt. No. 46-1 at 2. Plaintiff contends that, in response to his complaints of pain, the Hudson medical staff administered him over-the-counter Motrin. Id.

Plaintiff's conclusory allegations do not create a material issue of fact precluding summary judgment. See Brown v. White, No. 9:08-CV-200 (GLS/ATB), 2010 WL 985184, at *8 (N.D.N.Y. Mar. 15, 2010) ("[P]laintiff's conclusory suggestion that [the defendant] completely refused to provide any medical attention . . . is insufficient to create a dispute of fact in the face of the sworn affidavit and supporting documentary evidence in the record."); Benitez v. Pecenco, No. 92 Civ. 7670 (DC), 1995 WL 444352 at *3 n.5, 1995 WL 444352 (S.D.N.Y. July 27, 1995) (finding that the plaintiff's conclusory allegation that he was denied medication was contradicted by his medical records and did not create a material dispute of fact). "Issues of medical judgment cannot be the basis of a deliberate indifference claim where evidence of deliberate indifference is lacking." Hill v. Curcione, 657 F.3d 116, 123 (2d Cir.2011) (citation omitted). Plaintiff's allegations that he requested and was denied Neurontin do not establish that Dr. Rosenfield deviated from the standard medical treatment plan, or that he "acted with a culpable state of mind in making this decision." Rush, 923 F. Supp. 2d at 555. Plaintiff's claims, at most, amount to a disagreement with Dr. Rosenfield's medical judgment, and do not give rise to an Eighth Amendment claim. Id.; Idowu, 2013 WL 4780042, at *8; Veloz, 339 F. Supp. 2d at 525 (concluding that the plaintiff's contention that the defendant denied him pain medication amounted to a disagreement with a medical provider over a treatment plan, and does not

implicate the Eighth Amendment.).

Accordingly, insofar as plaintiff claims that the denial of pain medication amounted to deliberate indifference, it is recommended that defendant's motion on this ground be granted.

## D. Qualified Immunity

Defendant argues that, even if plaintiff's constitutional claims are substantiated, he is entitled to qualified immunity.  Dkt. No. 39-6 at 21-22.  Qualified immunity shields public officials from being sued for conduct undertaken in the course of their duties so long as that conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (internal quotation marks and citation omitted); Eng v. Coughlin, 858 F.2d 889, 895 (2d Cir. 1988).  However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights."  Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted).  A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation.  Aiken v. Nixon, 236 F. Supp. 2d 211, 230 (N.D.N.Y. 2002).

38

Here, plaintiff has not established a constitutional violation to satisfy the first prong of the qualified immunity test. See Discussion supra Section III. Moreover, it was objectively reasonable for Dr. Rosenfield to believe that his prescribed course of treatment would effectively treat plaintiff's symptoms. See subsection III.C.2. supra. By prescribing the standard effective treatment for plaintiff's condition, it cannot be said that Dr. Rosenfield objectively knew he was violating plaintiff's constitutional rights. See id. Because there is no constitutional violation, the undersigned does not reach whether the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. Accordingly, in the alternative to dismissal for failure to exhaust administrative remedies or failure to demonstrate deliberate indifference to serious medical needs, it is recommended that defendant's motion on this ground be granted.

### III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**RECOMMENDED**, that defendant's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 39) be **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 31) be **DENIED**; and it is further

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) be **DISMISSED** in its entirety, with prejudice; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.[7]

Dated: November 28, 2017
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[7] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(C).